PROVO STY, J.
[1] There being an exception. of no cause of action, it becomes necessary to set forth with some fullness the allegations of the petition. Plaintiff alleges that he is a licensed real estate broker, and that in August, 1910, he entered into an oral contract with C. A. Ransom, who was acting for himself and for M. C. and N. C. Baker, his associates, according to which he was to procure a purchaser for certain plantations •owned and controlled by these parties- in the parishes of St. Bernard and Plaquemine, and was to be paid a commission for so doing; that, later, in September, 1910, M. C. Baker confirmed and ratified said agreement, and fixed at 10 per cent, the commission he should receive; that petitioner’s partner in business, Mr. Longshore, introduced to Mr. Ransom a Mr. Little, who then began with Ransom and his associates negotiations which resulted in a trade for the Greenwood plantation ; and that, in pursuance of said trade, said Little deposited money in escrow, whereby petitioner became entitled’ to his commission; that afterwards by special agreement with Ransom petitioner reduced his commission to $750; and that, later on, Little bought the Monsecours plantation for $18,000, ón which petitioner became entitled to his commission of 10 per cent.
In support of the exception of no cause of action, it is said that there is no allegation that Ransom had authority to bind the Bakers, and none that M. O. Baker had authority to bind the other two; and that, if it were conceded that a contract was alleged as between plaintiff! and M. O. Baker, there is no allegation of a performance of that contract, since there is no allegation of the existence of a partnership between Ransom and Baker; and hence the allegation that a prospective purchaser was introduced to Ransom does not amount to an allegation of the introduction of a purchaser to Baker.
We think the petition sufficiently sets forth that the defendants were associates in business, and that the business relations of the plaintiff with them, or either of them, were as such.
The defendants in their answers deny that they ever were associated in business; the Bakers deny that they ever had a contract of any kind with plaintiff, or any connection with the Greenwood plantation; Ransom denies that he ever had any connection with the Monsecours plantation; he admits that he agreed to pay plaintiff a commission if plaintiff procured a purchaser for Greenwood, but avers that this plantation was not sold to any purchaser produced by plaintiff.
There was judgment for plaintiff against Ransom and M. C. Baker, in solido, for a 10 per cent, commission on the sale of Monsecours plantation, and otherwise dismissing his suit. He has not asked for an amendment of this judgment, but Ransom and Baker have appealed.
[2, 3] The defendants were in the real estate business, and occupied an office across the hall from that of plaintiff. The defend *699 ants, jointly or separately, had the Greenwood and Monsecours plantations for sale, as well as a list of other plantations, all in the parish of Plaquemine and fronting on the east bank of the Mississippi river, beginning about 30 miles below New Orleans. M. O. Baker admits that he was willing to pay a 10 per cent, commission to whoever should procure a purchaser for any one of the plantations he had for sale; and that he sent out letters indiscriminately to that effect; and that plaintiff may have had one of these letters. Plaintiff does not pretend to haVh received one of these letters, but says that the same offer was made to him orally. Baker, in his testimony, does not deny this. In fact, he admits that plaintiff had authority from him to try and find purchasers for the plantations he had for sale,.including the Monsecours; and that, to facilitate him in that endeavor, he was either given, or allowed to take from the office, maps, plats, and circulars relative to these plantations. Baker denies, however, that there ever was any agreement with reference specially to Monsecours, or that plaintiff was the procuring cause of the sale of Monsecours.
At one time it was thought that the sale of Greenwood to Little for $15,000 was closed; and Ransom, then, at the request of plaintiff, wrote plaintiff a letter stating that the commission of plaintiff on this sale was $750, or, in other words, 5 per cent. This fact accords little with plaintiff’s statement that he had a contract for a commission of 10 per cent; for, if he had a contract for 10 per cent., why claim, or accept without demur, 5 per cent. Of this discrepancy, plaintiff makes no attempt at explanation; while defendants, on the other hand, lay stress upon it as destroying entirely plaintiff’s theory that the defendants were partners and entered with him into a contract for a commission of 10 per cent.
There is no denying that this discrepancy is a serious flaw in plaintiff’s case. Indeed, we have to confess that for a while it kept us in great perplexity and uncertainty what was the proper conclusion to reach in the case. But, notwithstanding this flaw, the fact remains that plaintiff did have authority, on the promise of a 10 per cent, commission, to procure a purchaser for the Monsecours and other plantations which M. O. Baker had for sale; and that he did bring Mr. Little to the Baker-Ransom office as a purchaser; and that he did, either personally or through his then partner, Longshore, make efforts, by correspondence and otherwise, to procure purchasers; and did, on several occasions, take would-be purchasers down the coast in an automobile to view the plantations ; and did, on other occasions, accompany Ransom or Baker on the same mission. True, he presented Little as a candidate for Greenwood, and not Monsecours; but we do not see that that can make any difference. Whether Ransom and M. O. Baker were partners or not, or were conducting their business jointly or not, they were certainly conducting together in this office the business of selling these plantations; . and it would be contrary to the plainest principles of good faith and right dealing to allow the just claim of the plaintiff for a commission to be defeated by this simple process of shunting the purchaser from one plantation to another. Ransom, himself, in a conversation with plaintiff’s then partner, Mr. Longshore, was of the opinion that plaintiff was entitled to a commission of some kind from Baker.
Plaintiff’s learned counsel suggest that this change of mind on the part of Little must have come about on an automobile trip which Little took down the coast with M. C. Baker and others to view the plantations; and as the result probably of the manner in which M. C% Baker set forth the respective attractions of the two places, he having had a strong incentive for bestowing his brighter *701 colors upon Monsecours, his profit on the sale of it being over $10,000, while on the sale of Greenwood it would be only $3,000.
On the sale of Monsecours, Ransom was paid a commission of $1,000. This goes in confirmation of the positive testimony of both Ransom and Baker that they were not partners in this real estate business, or conducting it for joint account, but simply occupying the same office, and helping each other as occasion offered. And as Ransom could be held in this suit only on the theory of his having been a partner, the judgment as against him must be reversed.
The judgment appealed from is therefore reversed in so far as it condemns G. A. Ransom, and the suit of plaintiff against O. A. Ransom is dismissed; and said judgment is otherwise affirmed. M. G. Baker to pay the costs of both courts.